Glenn F. Ostrager (GO-2023)
Roberto L. Gomez (RG-6474)
OSTRAGER CHONG FLAHERTY & BROITMAN
570 Lexington Avenue
New York, New York 10022
(212) 681-0600

Randy Kornfeld (RK-9908)
KORNFELD & ASSOCIATES, P.C.
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767

*Attorneys for New York*
*Thoroughbred Breeders, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NEW YORK CITY OFF-TRACK BETTING CORPORATION | Chapter 11<br>Case No.: 09-17121 (MG) |

**JOINDER OF NEW YORK THOROUGHBRED BREEDERS, INC. IN OBJECTION OF THE NEW YORK RACING ASSOCIATION, INC. TO DEBTOR'S BANKRUPTCY PETITION AND STATEMENT OF QUALIFICATIONS UNDER SECTION 109(C)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The New York Thoroughbred Breeders, Inc. ("NYTB"), by and through its

undersigned counsel, hereby joins in the Objection of the New York Racing Association, Inc. to

Debtor's Bankruptcy Petition and Statement of Qualifications Under Section 109(c) (Docket No.

33) ("The Objection". In support of this Joinder, NYTB states as follows:

1.      On December 3, 2009 (the "Petition Date"), NYC OTB filed the Petition [Docket No. 1] and Statement [Docket No. 6], along with the Declaration of Robert J. Garry in Support of the Chapter 9 Petition and the Statement of Qualifications (the "Garry Declaration") [Docket No. 2] and the Declaration of Raymond Casey in Support of the Chapter 9 Petition and the Statement of Qualifications (the "Casey Declaration") [Docket No. 3].

2.      The New York Thoroughbred Breeders, Inc. ("NYTB") is a not for profit corporation with among its stated purposes is to act as the authorized representative of the thoroughbred industry in New York State, communicating the advantages and rewards of breeding thoroughbreds in the State of New York, and for conducting and coordinating activities with breeding and racing associations agencies, including, but not limited to, the New York Racing Association (NYRA), the New York Racing and Wagering Board and the New York State Thoroughbred Breeding and Development Fund (the "Breeding Fund"). In essence, NYTB represents the constituents that make up the entire breeding and racing industry in the State. As such, the members of NYTB are directly affected by the NYC OTB Petition.

3       The New York State Thoroughbred Breeding and Development Fund (the "Breeding Fund") is the eleventh largest Unsecured Creditor of NYC OTB's List of Creditors Holding 20 Largest Unsecured Claims (the "Unsecured Creditors List") [Docket No. 4]. The outstanding NYC OTB debt as of the date of the Petition to the Breeding Fund is $1,799,592.77. This debt is tied into the amount of the NYC OTB handle as described in Garry Declaration and the Casey Declaration. Thus, this debt continues to grow with every wager taken by NYC OTB. The Breeding Fund distributes the money collected from NYC OTB and other regional OTB corporations back to the State's breeding and racing industry through purse enhancement and breeders awards. Thus, NYTB and its members have a direct interest in the outcome of NYC

2

OTB's bankruptcy as it relates to payments to its debtor the Breeding Fund because those payments ultimately make it to the members of NYTB.

      4.     As stated in the Casey Declaration, NYC OTB was established and designated to operate as a public benefit corporation with a mission to operate in a manner compatible with the well being of the New York horse racing industry. (Casey Declaration ¶ 5). Admittedly, the impact of the horse industry in New York State is very profound. Quoting from Casey, "In 2007, thoroughbred racing contributed $1.7 billion annually to the State's economy. It employs 35,000 people across the State and supports a large variety of small businesses, and supports more than 400 New York State breeding farms." (Casey Declaration ¶ 9) These farms range from small family farmers to large commercial breeding farm corporations. In 2008, over 40,000 acres of farmland was utilized for breeding and training of thoroughbreds in New York State, contributing over $2 billion to our state's gross domestic product, and $124 million in annual taxes. $88 million of this tax revenue is paid to state government and $13 million to local government. In keeping with the growing New York-bred thoroughbred horse population, more than 1,000 New York Bred Restricted Races were conducted in 2008.

      5.     New York's thoroughbred breeding fund receives no direct taxpayer money, no appropriation or member-item allocation from the State legislature. Instead, the incentives provided by the Fund are financed entirely from within the racing industry, from a small percentage of the total monies wagered through the pari-mutuel system on thoroughbred racing in New York State. The breeding industry in New York has grown for the last 30 years shaping our racing product and signal, increasing OTB wagering, creating jobs, and saving and cultivating farmland in 50 New York counties. However, the past 24 months have been the most devastating ever suffered by the state's breeders. The economic slowdown has hit New York's

equine industry hard and the national industry has begun a contraction phase that has further hurt New York breeders.

6.     Just in the last 12 months (3) of the largest commercial farms in New York have closed. From just those (3) farm closures, New York has lost over 400 broodmares or 15% of the producing mothers. Also, due to the infusion of VLT machines in our neighboring State of Pennsylvania, breeders have been flocking – and continue to flock – there with their broodmares to reap the benefits of increased purses and a breeders' awards program that is now 36% larger than New York's ($21.7-million in 2008). Furthermore, and most important, the 2009 foal crop in New York was down 15% from the previous year and 21% from just 5 years ago. The result is that in 2 years time there will be 500 fewer horses to race in New York than are available today. This will have a proportionately -- and significantly -- negative effect on the racing product, handle, and wagers taken.

7.     The growth of the breeding industry and success of the NY breeding program has been largely dependent on revenue generated by in-state handle, both on and off the track. This has important implications for the future, since unfortunately the Fund receives no revenue from the out-of-state simulcasting of races run in New York, despite the fact that breeders provide what is essentially the raw material that drives the racing industry. The horses they breed are the "product" without which no venue could conduct pari-mutuel wagering. Without the product – the horses – there would be no race to hold, no ticket to wager and no handle to disburse. The simple fact is organizations such as NYC OTB might cease to exist without the production of horses by breeders of New York State. While simulcasting and phone account wagering have continued to grow, "live" on-track handle is diminishing year over year

as track attendance declines. Obviously, this migration of handle away from the pools that sustain the breeding industry is of deep concern to the NYTB.

       8.     NYC OTB has asked to modify the current legislative distribution system to allow NYC OTB to pay its operating expenses before it calculates its mandatory distribution to the State thoroughbred industry as well as to State and local governments (payment on the "net" rather than the "gross"). This legislative request is one that NYTB cannot support. This new distribution scheme would be based on revenue that results after NYC OTB pays its hefty overhead costs, which would result in insufficient or potentially zero funds to left over to distribute to the New York thoroughbred breeding and racing industries.

       9.     NYC OTB is statutorily required to distribute a percentage of the gross dollars wagered through its services on a race to the New York State (the "State") horse racing industry, including the Breeding Fund. (Garry Decl. ¶ 7) Specifically, the regional off-track betting corporations pay the Fund one-half of 1% of total daily pools from regular, multiple and exotic bets, and 3% of super exotic bets. While this figure is but a small fraction of the OTB's revenues, it represents a significant portion of the revenues of the Breeding and Development Fund. In fact, the Fund received 36% of its annual revenue ($3.8-million in 2008) from NYC OTB, making NYC OTB the single largest source of Fund revenue. The various other OTBs accounted for an additional 34% of the Fund's annual revenue ($3.5-million in 2008). Collectively OTBs account for 70% of the Fund's annual revenue stream based on 2008 figures NYC OTB has not made timely payment to the Breeding Fund of distributions mandated by the Racing Law. (Unsecured Creditors List.).

      10.    NYTB objects to the relief sought in the Debtor's bankruptcy petition on the bases set forth in the Objection and herein and joins and supports the Objection.

11.     NYTB reserves its right to amend and supplement this Joinder and incorporate to the extent applicable other objections to the Petition filed by other parties in interest.

Dated: January 6, 2010

_/s/ Randy Kornfeld_____

Randy Kornfeld (RK-9908)
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767

Glenn F. Ostrager (GO-2023)
Roberto L. Gomez (RG-6474)
OSTRAGER CHONG FLAHERTY &
    BROITMAN
570 Lexington Avenue
New York, New York 10022
(212) 681-0600

_Attorneys for New York_
_Thoroughbred Breeders, Inc._

## CERTIFICATE OF SERVICE

I, Roberto L. Gomez hereby certify that on January 6, 2010, a true and correct

copy of the foregoing Joinder Of New York Thoroughbred Breeders, Inc. In Objection of the

New York Racing Association, Inc. To Debtor's Bankruptcy Petition And Statement Of

Qualifications Under Section 109(c) was served upon the following parties by U.S. first class

mail, postage prepaid:

Richard B. Levin
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Roberto L. Gomez