Hodgson Russ LLP
60 E. 42nd Street, 37th Floor
New York, NY 10165
Telephone: (212) 661-3535
Facsimile: (212) 972-1677
Deborah J. Piazza, Esq.

Hodgson Russ LLP
140 Pearl Street, Suite 100
Buffalo, NY 14202
Telephone: (716) 856-4000
Facsimile: (716) 849-0349
Steven W. Wells, Esq.
Michael E. Reyen, Esq.

Attorneys for Finger Lakes Racing Association, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>NEW YORK OFF-TRACK BETTING CORPORATION,<br>      Debtor. | Chapter 9<br><br>Case No. 09-17121(MG) |

## MOTION OF FINGER LAKES RACING ASSOCIATION, INC. TO COMPEL THE DEBTOR TO IMMEDIATELY PAY ITS POST-PETITION OBLIGATIONS, COMPLY WITH THE REQUIREMENTS OF THE NEW YORK RACING, PARI-MUTUEL WAGERING AND BREEDING LAWS AND MAKE CERTAIN STATUTORY DISTRIBUTIONS

Finger Lakes Racing Association, Inc. ("Finger Lakes"), by and through its undersigned counsel, hereby moves (the "Motion") this Court for the entry of an order compelling New York City Off-Track Betting Corporation, the above-captioned debtor (the "Debtor" or "NYCOTB"), to immediately pay its outstanding post-petition obligations, comply with the statutory requirements of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "NY Racing Law") to fulfill the post-petition statutory distributions currently owed and pay all future post-petition distributions to Finger Lakes, pursuant to NY Racing Law § 1016, 11

U.S.C. §§ 105(a) and 503(b) and 28 U.S.C. § 959(b). In support of the Motion, Finger Lakes states as follows:

## PRELIMINARY STATEMENT

1. Over the course of NYCOTB's Chapter 9 proceeding, the Debtor has failed to meet its promises and has slowly and steadily lost credibility with its creditor body and parties in interest, including the New York State legislature, the racetracks, and the horsemen. At the outset of the case, and in open Court, the Debtor made the conclusive assurance and pledge that it had every intention of paying its post-petition obligations. The Debtor has now gone back on this promise and announced a unilateral decision to defer payments of monies to the racing industry – monies that represent the lifeblood of the racetracks. As discussed in detail herein, these payments to the racetracks are statutorily mandated. These are not discretionary payments, but payments and obligations that require NYCOTB to pay money to the tracks. As set forth in detail below, this statutory framework has been in place for decades and was designed to compensate the racetracks which provide live racing for the loss of revenue when the OTBs were authorized to accept wagers on out of state races. This expansion of OTB's offerings diverted patrons, as well as betting handle, away from the racetracks. If this Court is to allow the Debtor to reap the benefits of Chapter 9, it should require NYCOTB to meet its post-petition statutory obligations and comply with state and local laws.

2. Time and time again, the Debtor has used the press and sought legislative help to promulgate its shifting agenda without regard, while ignoring its creditor body and the Chapter 9 court process. Initially, in an attempt to pressure the Legislature, the Debtor manufactured a crisis in which the future of approximately 1,400 NYCOTB employees and union members were forced to be weighed against the long-term health and well-being of a

racing industry. *See* Matt Hegarty, *New York OTB Threatens to Close on March 30*, Racing Daily Form, Jan. 25, 2010 (attached hereto as Exhibit A). The Debtor then retracted its decision for a hasty shut down and instead gave its unionized workers two 4% raises as well as cover the costs of a severance buyout program. *See* Richard Steier, *OTB Will Cover Costs of 8% Raises, Buyout Plan Minus State Help*, The Chief, Apr. 30, 2010 (attached hereto as Exhibit B); Ariel Kaminer, *The OTB Parlors, Limping Along*, N.Y. Times, Apr. 23, 2010 (attached hereto as Exhibit C). At the same time it chose to raise the wages of its employees, the Debtor announced – contrary to its earlier promise – to simply defer statutory and other payments to the tracks. *See* Victor Whitman, *NYC OTB Lost its Credibility with Shutdown Threat, Assemblywoman Gunther Says*, Time-Herald Record, Apr. 21, 2010 (attached hereto as Exhibit D).

3. Chapter 9 cannot be used as both a sword and a shield. Indeed, no debtor, whether in Chapter 11 or 9, is permitted to ignore post-petition obligations. It appears that NYCOTB would like the benefits of chapter 9 without the burdens. The Debtor does not want to pay its obligations retrospectively or prospectively. However, the Court should not condone these actions or allow NYCOTB to avail itself of the protections of the United States Bankruptcy Code (the "Bankruptcy Code") under these circumstances.

4. NYCOTB simply ignores that it is a "debtor" with the same post-petition obligations as any other debtor, particularly the obligation to pay amounts accrued and owed post-petition comply with state and local laws. As this Court is aware, many creditors supported the Chapter 9 filing on the premise that the Debtor would pay all postpetition obligations as such obligations become due, or in certain circumstances on a reasonable thirty day delay. In addition, many creditors supported the Debtor's Chapter 9 petition on the grounds that NYCOTB would benefit from the advantages afforded by the Bankruptcy Code to address its financial

troubles and take the steps necessary for NYCOTB to become a profitable and viable business. The last few months have demonstrated otherwise and the Debtor has been less than forthright with respect to its true motives and intentions. Indeed, under the current circumstances, Chapter 9 may no longer be appropriate.

5. If NYCOTB wishes to remain a debtor in Chapter 9, the Debtor needs to be able to remain current in its post-petition obligations and pay those going forward as well. Until NYCOTB obtains court approval to defer post-petition payments and/or obtains relief from the legislature, it cannot unilaterally decide to avoid obligations and to reward others – a result clearly contrary to the equitable principles underlying the Bankruptcy Code. Otherwise, despite its need to reorganize, the best solution may be to have NYCOTB's Chapter 9 proceeding dismissed. In any event, the Debtor is required to fulfill its statutory obligations under the NY Racing law and make the payments which Finger Lakes seeks the Court to compel in this Motion.

## **JURISDICTION, VENUE, AND STATUTORY PREDICATES**

6. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

7. This Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (G). Venue is proper pursuant to 28 U.S.C. § 1409.

8. The statutory predicates for the relief sought herein are section 11 U.S.C. §§ 105(a) and 503(b) and 28 U.S.C. § 959(b).

## FACTUAL BACKGROUND

9. On December 3, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition (the "Petition") for relief under Chapter 9 of the Bankruptcy Code.

10. The Debtor is a public benefit corporation created by NY Racing Law § 518. The Debtor operates an off-track pari-mutuel betting system through the OTB parlors, internet wagering and television racing channels. The Debtor accepts wagers on live horse racing events taking place at New York State tracks as well as tracks all over the country.

11. The enabling statute which created the OTB system in New York, NY Racing Law § 518, specifically sets forth the mission statement and the Legislature's purpose in creating the OTB system for New York State. It states, in pertinent part:

> It is also the intention of this article to ensure that off-track betting is conducted in a manner compatible with the well-being of the horse racing and breeding industries in this state, which industries are and should continue to be major sources of revenue to state and local government and sources of employment for thousands of state residents.

12. Thus, it is the public policy of the State of New York that the OTB corporations in New York State foster and contribute to the well-being of the horse racing industry in New York State.

13. Finger Lakes owns and operates Finger Lakes Racing Track in Farmington, New York. Finger Lakes has been conducting live thoroughbred racing for 48 years and conducts live racing over 9 months of the year. It provides racing opportunities for a multitude of horsemen, including owners, trainers and jockeys in New York. It also supports

many hundreds of other ancillary and related jobs connected to the racing and breeding industry, including, but not limited to, agriculture in New York State.

## STATUTORY PAYMENTS

14. When the OTB system was created in 1973, the OTBs only took bets on New York State racetracks. In the early 1990's, the OTBs, including the Debtor, lobbied the State Legislature to permit them to accept wagers on out-of-state thoroughbred tracks in order to increase their betting handle. The New York State Legislature passed enabling legislation embodied in NY Racing Law § 1017 (now NY Racing Law § 1016) which permitted the OTBs to take bets on thoroughbred races outside of New York State. By permitting additional wagering to patrons of the OTBs on out-of-state races, the amount of wagering on New York State racetracks, including Finger Lakes, would be diminished since there were additional products being offered by the OTBs to their patrons.

15. To compensate the New York State tracks for the loss of betting dollars at OTBs on the New York State thoroughbred races, statutory formulas were enacted which provided for payments to thoroughbred tracks based on wages made at OTBs. See NY Racing Law §§ 1016(3) and 1016(4). For many years, Finger Lakes received for many years statutory payments from the Debtor. However, in recent months its payments have been delayed. In fact, at the time it filed its Petition, the Debtor had not made the statutory payments due to Finger Lakes for the six (6) months prior to the filing.

16. In 2009, Debtor's statutory payments due to Finger Lakes were in excess of $3.9 million. These statutory payments amounted to twenty percent of Finger Lakes' racing revenue, and twenty percent of Finger Lakes' purse account.

17. Prior to the filing of the Debtor's Petition, although the Debtor was behind in its statutory payments to Finger Lakes, it was paying on a monthly basis. Shortly after the filing of the Chapter 9 petition, the Debtor made representations and assurances that it would pay the statutory commissions on a one month lag basis, and the Debtor did pay its post-petition statutory commissions on a one month lag basis for the months of December 2009 and January and February 2010. However, directly after the Debtor's public statements that it was "deferring the statutory commissions," the Debtor failed to pay Finger Lakes the March statutory payments due on April 30, 2010. The last payment received by Finger Lakes for statutory payments was at the end of March 2010, which was for the month of February 2010.

18. The purse structure of Finger Lakes, i.e. the amount of money paid in purses for the various live races conducted over 160 days a year at Finger Lakes, needs to be maintained at a competitive level so that horsemen do not choose to forego racing at Finger Lakes in favor of other states, where higher purses are offered. A substantial reduction in the amount of money available for purses (tied directly to the payments which the Debtor is statutorily obligated to make to Finger Lakes) will inevitably result in a large exodus of horsemen and horses from Finger Lakes, an injury to Finger Lakes' business and reputation that is likely to be irreparable. Moreover, this harm to racing at Finger Lakes will frustrate and defeat one of the main purposes for which OTB was created, and ultimately diminish the potential betting revenue available to the Debtor from New York thoroughbred race tracks.

## RELIEF REQUESTED AND BASES FOR RELIEF

19. Finger Lakes respectfully requests that this Court compel the Debtor to pay its post-petition obligations, comply with the requirements of the NY Racing Law § 1016 to make the post-petition statutory distributions currently owed and all future post-petition statutory distributions (collectively, the "Statutory Distributions"), pursuant to 28 U.S.C. § 959(b), and 11 U.S.C. §§ 105(a) and 503(b).

20. The establishment and operation of off-track wagering in New York is governed by a comprehensive regulatory scheme set forth in the NY Racing Law as described above. Under the NY Racing Law, the Statutory Distributions are mandatory.

21. Section 959(b) of Title 28 of the United States Code provides that

> a trustee, receiver or manager appointed in any case pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).[1] A debtor "must comply with all applicable state laws that regulate any aspect of 'carrying on' a business." 1 Collier on Bankruptcy ¶ 10.03 (15th ed. 2009). The Bankruptcy Code does not relieve the debtor from complying with state regulatory law. *Id.* Section 959(b) has been applied in a number of contexts to require a trustee (or debtor-in-possession) to comply with state and local laws. *See, e.g., In re Chaffee Aggregates, Inc.*, 300

---

[1] In a Chapter 9 case, the terms "trustee," "debtor" and "debtor-in possession" are interchangeable. *See* 11 U.S.C. § 902(5); *see In re Ranasinghe*, 341 B.R. 556, n.8 (Bankr. E.D. Va. 2006) ("Chapter 9 does not use the term "debtor in possession" but does define "trustee" for most purposes as meaning the debtor.").

B.R. 170, 172 (W.D.N.Y. 2003) (local zoning requirements); *Saravia v. 1736 18th St. N.W. Ltd. P'ship*, 844 F.2d 823, 826-27 (D.C. Cir. 1998) (housing codes); *In re Go West Entertainment, Inc.*, 387 B.R. 435, 445 (S.D.N.Y. 2008) (liquor licensing); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071-72 (9th Cir. 1998) (state taxes). Similarly, in this case, the Debtor must comply with its statutory obligations under the New York Racing Law (the authority pursuant to which it was created) and make the payments sought herein – to allow otherwise would set a dangerous precedent whereby debtors-in-possession could unilaterally decide which regulations with which to comply.

22. Moreover, the Bankruptcy Court is a "court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be inconsistent with the Bankruptcy Code." *In re Beaty*, 306 F.3d 915, 922 (9th Cir. 2002). Section 105(a) of the Bankruptcy Code is the basis for such power, and provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by an party in interest shall be construed to preclude the court from, sua sponte, taking any action or making an determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In practice, section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[i]t is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process"); *In re Interpictures Inc.*, 210 F.3d 354, 2000 WL 232149,

at *2 (2d Cir. 2000). Section 105 is often characterized as "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of Section 105(a) is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 L. King, Collier on Bankruptcy § 105.01, at 105-3 (1996).

23. Principles of equity dictate that if a debtor is utilizing the services of a non-debtor party post-petition, those services should be compensated. In this case, the Debtor is receiving substantial betting revenue from the races being held by Finger Lakes. To allow it to refrain from making its Statutory Distributions to Finger Lakes would clearly be unjust. Furthermore, as set forth above, permitting the Debtor to withhold statutory payments will significantly impact the ability of Finger Lakes, and similarly situated racetracks, to maintain their current level of competitive racing, ultimately undermining the system that the Debtor needs for much of its revenue.

24. Finally, the post-petition Statutory Distributions are administrative claims pursuant to 11 U.S.C. § 503(b). Section 503(b) of the Bankruptcy Code provides for the allowance of administrative expenses, so long as such expenses are "actual, necessary costs and expenses of preserving the estate." The statutory payments the Debtor must make under the NY Racing Law are necessary to the preservation of the bankruptcy estate and the business operations of the Debtor, Finger Lakes and other similarly situated racetracks, which, in turn, support the Debtor's reorganization.

25. Claims are entitled to administrative priority where the obligation in question arose post-petition with the debtor-in-possession and resulted in a benefit to the estate.

*See In re Chateaugay Corp.*, 115 B.R. 760 (S.D.N.Y. 1990). These Statutory Distributions arose post-petition and clearly benefit the estate. As set forth above, the Statutory Distributions promote competitive horse racing in New York and allow in-state racetracks, such as Finger Lakes, to attract highly skilled horsemen and attract spectators and bettors which, in turn, increases revenue to the Debtor – clearly a direct benefit to the bankruptcy estate. Thus, the post-petition Statutory Distributions sought herein are entitled to be paid as an administrative expense pursuant to Section 503(b) of the Bankruptcy Code.

26. Moreover. the post-petition amounts owed by the Debtor to Finger Lakes are mandated by statute. It would be a violation of public policy to permit the Debtor to violate state law by failing to make regular Statutory Distributions to Finger Lakes during the pendency of this Chapter 9 proceeding. It also would be contrary to the equitable principles underlying the Bankruptcy Code. Furthermore, the Statutory Distributions are an actual and necessary cost of preserving the bankruptcy estate and are entitled to be paid as an administrative expense under Section 503(b) of the Bankruptcy Code.

WHEREFORE, for all the foregoing reasons, Finger Lakes respectfully requests that the Court compel the Debtor to immediately pay its post-petition obligations, comply with the requirements of the NY Racing Law and continue make the post-petition Statutory Distributions currently owed as well as all future postpetition Statutory Distributions, pursuant to 28 U.S.C. § 959(b), 11 U.S.C. §§ 105(a) and 503(b), by entry of an order substantially in the form of the proposed order attached hereto.

Dated: May 24, 2010

**HODGSON RUSS LLP**

By: /s/ Deborah J. Piazza
    Deborah J. Piazza, Esq.
60 E. 42nd Street, 37th Floor
New York, New York 10165
Telephone: (212) 661-3535
Facsimile: (212) 972-1677

*Attorneys for Finger Lakes Racing Association, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 9 |
|---|---|
| NEW YORK OFF-TRACK BETTING CORPORATION,<br>                Debtor. | Case No. 09-17121(MG) |

ORDER GRANTING THE MOTION OF FINGER LAKES RACING
ASSOCIATION, INC. TO COMPEL THE DEBTOR TO IMMEDIATELY PAY
ITS POST-PETITION OBLIGATIONS, COMPLY WITH THE REQUIREMENTS
OF THE NEW YORK RACING, PARI-MUTUEL WAGERING AND
BREEDING LAWS AND MAKE CERTAIN STATUTORY DISTRIBUTIONS

Upon the Motion (the "Motion") of Finger Lakes Racing Association, Inc. ("Finger Lakes"), by and through its undersigned counsel, for the issuance and entry of an order compelling New York City Off-Track Betting Corporation, the above-captioned debtor (the "Debtor"), to immediately pay its outstanding post-petition obligations and comply with the statutory requirement of the New York Racing, Pari-Mutuel Wagering and Breeding Laws (the "NY Racing Law") to fulfill the post-petition statutory distributions currently owed and all future post-petition distributions to Finger Lakes Racing Association, Inc., pursuant to NY Racing Law §§ 532 and 1016, 11 U.S.C. §§ 105(a) and 503(b) and 28 U.S.C. § 959(b); and upon due deliberation and sufficient cause appearing therefor, it is accordingly hereby:

**ORDERED,** that the Motion is granted in its entirety; and it is further

**ORDERED,** that all responses or objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion are overruled or resolved by this Order; and it is further

**ORDERED,** that the Debtor must immediately pay its post-petition obligations and comply with the requirements of the NY Racing Law §§ 532, 1015 and 1017 to make all of the post-petition statutory distributions currently owed and all future statutory distributions pursuant to 28 U.S.C. § 959(b), and 11 U.S.C. §§ 105(a) and 503(b); and it is further

**ORDERED,** that all statutory payments which have been earned pursuant to NY Racing Law §§ 532 and 1016 from the date of the bankruptcy filing through the date hereof should be paid upon entry of this Order; and it is further

**ORDERED,** that all statutory payments accrued after the date hereof, shall be made on an ongoing basis and no later than 30 days after same have accrued; and it is further

**ORDERED,** that the Court shall retain jurisdiction to hear and determine any matter or disputes arising from or relating to this Order of the matters addressed in the Motion.

Dated: June __, 2010

---

HONORABLE MARTIN GLENN
United States Bankruptcy Judge