Richard Levin (RL 1651)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Debtor New York City Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>NEW YORK CITY OFF-TRACK BETTING CORPORATION,<br><br>Debtor.[1] | Chapter 9<br><br>Case No. 09-17121 (MG) |

**INITIAL RESPONSE OF NEW YORK CITY OFF-TRACK BETTING CORPORATION TO THE MOTIONS OF EMPIRE RESORTS, INC. AND FINGER LAKES RACING ASSOCIATION, INC. TO COMPEL THE DEBTOR TO COMPLY WITH THE REQUIREMENTS OF THE NEW YORK RACING, PARI-MUTUEL WAGERING AND BREEDING LAW AND MAKE <u>CERTAIN STATUTORY DISTRIBUTIONS</u>**

**INTRODUCTION**

Motions to compel the Debtor, New York City Off-Track Betting Corporation ("NYC OTB"), to comply with the requirements of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "Racing Law") and make certain statutory distributions were filed by Empire Resorts, Inc., operator of Monticello Raceway

---

[1] NYC OTB's address is 1501 Broadway, New York, NY 10036. NYC OTB's tax identification number is 13-2664509.

("Empire" or "Monticello") [Docket No. 86], and by Finger Lakes Racing Association, Inc., operator of Finger Lakes Race Track ("Finger Lakes") [Docket No. 89] (collectively, the "Motions"). The Motions argue that during the post-Petition period, NYC OTB has not complied with the Bankruptcy Code or the Racing Law because it has deferred payment of certain statutorily required commissions.

Since filing of the Motions, Meyer S. Frucher, Chairman of NYC OTB's Board of Directors, tendered his resignation to Governor David Paterson; Governor Paterson has appointed Lawrence Schwartz as the new Chairman of NYC OTB. As a result of the change in NYC OTB's leadership, NYC OTB requested additional time to confer with its new Chairman before filing a definitive response to the Motions. Based on such request, Empire, Finger Lakes and NYC OTB entered into a Stipulation, Agreement and Order Among the Parties (the "Stipulation") filed on June 10, 2010, which requires that NYC OTB file an Initial Response to the Motions by June 11, 2010 at 4:00 p.m. and permits NYC OTB to file a Supplemental Response to the Motions no later than 10 days prior to any hearing on the merits of the Motions set by the Court. NYC OTB now files this Initial Response as required by the Stipulation to preserve its right to oppose the relief requested in the Motions. NYC OTB therefore reserves the right to supplement, modify or withdraw this Initial Response.

**FACTS**

NYC OTB accepts wagering upon, and displays simulcasts signals of, live horse racing occurring at tracks both outside and inside New York State at OTB physical locations and via telephone and internet. NYC OTB obtains wagering rights and simulcast signals for tracks outside of New York under contracts that specify the amount

and timing of payments for those rights and signals. NYC OTB pays those contractually required fees within the time specified by its contracts. The Racing Law also sets amounts to be paid to in-state tracks attributable to wagers accepted by NYC OTB on races run at out-of-state tracks.

The Racing Law sets fees to be paid to in-state tracks for wagers accepted by NYC OTB for races held at those tracks (the "Direct Commissions"). For example, if Monticello conducts live racing on a given day, NYC OTB simulcasts the signal and accepts wagering on those races. The Racing Law obligates NYC OTB to pay the Direct Commissions to Monticello based upon the volume of wagers accepted by NYC OTB on the races held at Monticello. Although the Racing Law does not specify when Direct Commissions are to be paid, NYC OTB has, since the filing of its Petition, paid them on a thirty-day basis. The Motions do not seek to compel payment of contractual fees or Direct Commissions, as payment of both those sets of fees has not been deferred.

In some instances, additional payments are agreed to contractually. NYC OTB has contracts with both Finger Lakes and the New York Racing Association ("NYRA"),[2] operator of three New York thoroughbred race tracks, to simulcast live racing hosted at their tracks. Those contracts specify the amounts and timing of the payments. NYC OTB makes those contractual payments within the time specified by the contracts.

---

[2] NYC OTB's simulcast contract with NYRA, since expired, contained terms for when payments for NYRA's simulcast signals were to be remitted to NYRA. Although the contract has expired and a new contract has yet to be negotiated, NYC OTB continues to remit simulcast signal payments in accordance with the terms of the expired contract, and NYRA continues to accept such payments in return for providing the signal by which NYC OTB simulcasts live races at NYRA's tracks.

There are, in addition to Direct Commissions and contractual fees, a number of other statutorily required payments to the in-state tracks. Although those fees or commissions are based on various criteria, the common denominator is that they are all amounts based on wagers accepted by NYC OTB on races hosted by tracks *other than* the recipient of the statutory payment.

For example, Monticello, a harness raceway, moves to compel payment of "dark day" payments and payments from wagering accepted by NYC OTB on out-of-state harness races. "Dark day" payments are amounts based on a percentage of the wagers placed at NYC OTB on thoroughbred races at tracks outside of New York, on days when NYRA is not hosting races at one of its three in-state thoroughbred tracks (that is, in the parlance of the racing industry, when NYRA is "dark"). The Racing Law also requires NYC OTB to make payments to its three "Regional" harness tracks (including Monticello), based on wagers accepted by NYC OTB on harness races hosted by tracks outside of New York. In addition, the Racing Law provides for so-called "maintenance of effort" ("<u>MOE</u>") payments to the Regional harness tracks. MOE payments guarantee that Regional harness tracks like Monticello receive from NYC OTB at least what those tracks received from NYC OTB in calendar year 2002 from wagering on nighttime harness races hosted at tracks outside of New York. (Before calendar year 2003, the Racing Law restricted NYC OTB's ability to simulcast and accept wagers on nighttime thoroughbred racing at tracks outside of New York.) Similarly, Finger Lakes moves to compel remittance of statutory payments that are based on wagers accepted by NYC OTB on races hosted at out-of-state thoroughbred tracks.

The Racing Law is silent as to the time for remitting the fees and commissions that the Motions address (the "Indirect Commissions"). Before its bankruptcy, NYC OTB had deferred payment of such Indirect Commissions, in some cases for as long as up to 200 days following the end of the month in which the Indirect Commissions accrued.

The Indirect Commissions are based on wagers on races at racetracks *other than* Monticello or Finger Lakes and in most instances are based on wagers on racing held at tracks outside of New York. In fact, in-state recipients of the statutory payments receive collectively more than the out-of-state host tracks from NYC OTB for wagers on races at those tracks.

Without legislative action to alter the payment structure under the Racing Law, NYC OTB will continue to run structural deficits. As part of its legislative proposal to aid its restructuring, NYC OTB sought a payment structure that treated Direct Commissions and contractual fees as current operating expenses, to be deducted from revenues before calculating net income, but that would substitute the right to share in amounts remaining after deduction of operating expenses for the current Indirect Commissions. Although bills were being seriously discussed as late as April 2010, none was ultimately brought to a vote. During the course of negotiations with legislators, it appeared that legislators preferred a short-term plan for NYC OTB to continue its operations for up to a year, during which time a more permanent solution could be developed.

NYC OTB did not originally believe that its cash flow could support operations beyond mid-April without substitution of a different payment structure for the

Indirect Commissions that would provide it some cash flow relief. Based on its perception that a permanent legislative resolution would be deferred, NYC OTB determined to defer payment of the Indirect Commissions, as it had done pre-Petition, as a means of being able to continue operations, preserve jobs, prevent immediate imposition of significant accrued liabilities on New York City or New York State and continue negotiations for a restructuring of its finances. By deferring payment of Indirect Commissions, NYC OTB has been able to manage its cash flow to pay its operating expenses, including Direct Commissions and contractual fees, on a timely basis, allowing NYC OTB to continue its operations and allowing the Legislature and NYC OTB's Official Committee of Unsecured Creditors time to consider a more permanent resolution.

## **ARGUMENT**

In the Motions, Empire and Finger Lakes argue that section 959(b) of Title 28 of the United States Code requires NYC OTB to comply with State law in its operations during the chapter 9 case, that the Racing and Wagering Law requires prompt payment of Indirect Commissions and that the amounts owing are first priority chapter 9 administrative expenses that must be paid currently. Empire and Finger Lakes ask this Court to use its equitable powers under section 105(a) of the Bankruptcy Code to compel NYC OTB to pay the Indirect Commissions within 30 days after the month in which they accrue. NYC OTB does not dispute its liability under the current Racing Law for the Indirect Commissions, only the required timing of their payment and therefore the relief requested in the Motions.

First, section 959(b) does not apply to a municipal debtor in a chapter 9 case, either by its terms or by analogy. Section 959(b) applies only to an appointed trustee, receiver, manager or debtor in possession. A chapter 9 debtor is not a trustee, receiver or manager, nor is a municipal debtor appointed. Nor is a chapter 9 municipal debtor a "debtor in possession" subject to section 959(b).

Second, even if section 959(b) applied in this case, the Racing Law does not set a time for payment of the Indirect Commissions. Neither of the Motions cite to any provision of the Racing Law to support the times they propose for remittance of the payments. In fact, before bankruptcy, NYC OTB paid Indirect Commissions on a much longer schedule than proposed in the Motions.

Third, general operating expenses of a municipal debtor are not allowed as administrative expenses during a chapter 9 case. Such expenses are not within the control of the court, because it would give the court undue control over "the political or governmental powers of the debtor … [or] the property of the debtor". 6 Collier on Bankruptcy ¶ 900.04 (15th ed.); 11 U.S.C. 904.

Fourth, even if general operating expenses could qualify in a chapter 9 case as administrative expenses, the Indirect Commissions do not qualify under section 503(b) of the Bankruptcy Code. To qualify as an administrative expense, "First, it must arise from a transaction with the bankruptcy estate, and second, it must have directly and substantially benefited the estate." 4 Collier on Bankruptcy ¶ 503.06[3] (16th ed. 2010). The Indirect Commissions do not arise from any transaction with NYC OTB and do not directly and substantially benefit NYC OTB.

Finally, section 904 does not permit the Court to order the debtor to make any payment unless the debtor consents or such payment is provided in the plan. 11 U.S.C. § 904. Section 904 applies "notwithstanding any power of the court", including the court's powers under section 105 of the Bankruptcy Code. 11 U.S.C. § 904; 6 <u>Collier on Bankruptcy</u> ¶ 904.01 (15th rev. ed. 2009). However, based on recent discussions with representatives of the Racing and Wagering Board, NYC OTB agreed to consent to have this Court determine whether either the bankruptcy law or the Racing Law requires NYC OTB to make the payments according to the schedule requested by Empire and Finger Lakes.

**CONCLUSION**

As noted in the Introduction, NYC OTB is currently reviewing its position with respect to the timing of payment of Indirect Commissions. It expects to complete its review and determine its course of action before the evidentiary hearing on the Motions. Based on the review, there may be opportunities for consensual resolution of the Motions. Until completion of the review, however, and because of the requirement that NYC OTB file an Initial Response to the Motions by June 11, 2010, NYC OTB opposes the Motions and, for the reasons set forth above, requests that they be denied.

Dated: June 11, 2010

                                                    CRAVATH, SWAINE & MOORE LLP

By :  s/ Richard Levin
      RICHARD LEVIN (RL 1651)
      A member of the Firm

      Worldwide Plaza
        825 Eighth Avenue
          New York, NY 10019
            (212) 474-1000

*Attorneys for Debtor New York City Off-Track Betting Corporation*