STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Curtis C. Mechling
Mark A. Speiser
Sherry Millman
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for District Council 37, Local 2021*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x

*In re:*

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                        Debtor.

------------------------------------- x

Chapter 9

Case No. 09-17121 (MG)

**NOTICE OF MOTION OF DISTRICT COUNCIL 37, LOCAL 2021 FOR
APPOINTMENT OF TRUSTEE PURSUANT TO SECTION 926(a) OF THE
BANKRUPTCY CODE TO PURSUE CAUSES OF ACTION TO AVOID AND
RECOVER FRAUDULENT TRANSFERS MADE TO NEW YORK RACING
ASSOCIATION, YONKERS RACING CORPORATION, EMPIRE RESORTS, INC.,
MONTICELLO RACEWAY MANAGEMENT, INC., MONTICELLO RACEWAY,
FINGER LAKES RACING ASSOCIATION, INC., DELAWARE NORTH COMPANIES,
DELAWARE NORTH COMPANIES GAMING & ENTERTAINMENT, INC., VERNON
DOWNS AND TIOGA DOWNS**

      **PLEASE TAKE NOTICE** that District Council 37, Local 2021 has filed a Motion dated

December 22, 2010 (the "**Motion**") in the above-referenced chapter 9 case for Appointment of

Trustee Pursuant to Section 926(a) of the Bankruptcy Code to Pursue Causes of Action to Avoid

and Recover Fraudulent Transfers Made to New York Racing Association, Yonkers Racing

Corporation, Empire Resorts, Inc., Monticello Raceway Management, Inc., Monticello Raceway,

Finger Lakes Racing Association, Inc., Delaware North Companies, Delaware North Companies Gaming & Entertainment, Inc., Vernon Downs and Tioga Downs.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Martin Glenn of the United States Bankruptcy Court for the Southern District of New York (the "**Court**") in Room 501 of the United States Bankruptcy Court, located at One Bowling Green, New York, New York 10004 on **January 19, 2011 at 10:00 a.m.** (Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, shall set forth the basis for the objection and the specific grounds therefor, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties-in-interest, on a 3.5 inch disk (with a hard copy delivered directly to Judge Glenn's Chambers) and served in accordance with General Order M-399, and shall further be served upon: (i) counsel for District Council 37, Local 2021, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Sherry Millman, Esq.); (ii) counsel for NYC OTB, Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019 (Attn: Richard Levin) and; (iii) upon counsel for the Official Committee of Unsecured Creditors, Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (Attn: Marc E. Richards & Andrew B. Eckstein), so as to be actually received no later than **January 12, 2011, at 4:00 p.m.**, prevailing Eastern time (the "**Objection Deadline**"). Only objections made in writing and timely filed and received will be considered by the Court at any hearing on the Motion.

Dated: New York, New York
December 22, 2010

                          **STROOCK & STROOCK & LAVAN LLP**

                    By:   /s/ Curtis C. Mechling
                          Curtis C. Mechling
                          Mark A. Speiser
                          Sherry Millman
                          180 Maiden Lane
                          New York, New York 10038
                          (212) 806-5400

                          *Attorneys for District Council 37, Local 2021*

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Curtis C. Mechling
Mark A. Speiser
Sherry Millman
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for District Council 37, Local 2021*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
:
*In re:* :
: Chapter 9
NEW YORK CITY OFF-TRACK BETTING :
CORPORATION, : Case No. 09-17121 (MG)
:
:
Debtor. :
------------------------------------x

**MOTION OF DISTRICT COUNCIL 37, LOCAL 2021 FOR APPOINTMENT OF
TRUSTEE PURSUANT TO SECTION 926(a) OF THE BANKRUPTCY CODE TO
PURSUE CAUSES OF ACTION TO AVOID AND RECOVER FRAUDULENT
TRANSFERS MADE TO NEW YORK RACING ASSOCIATION,
YONKERS RACING CORPORATION, EMPIRE RESORTS, INC.,
MONTICELLO RACEWAY MANAGEMENT, INC., MONTICELLO RACEWAY,
FINGER LAKES RACING ASSOCIATION, INC., DELAWARE NORTH
COMPANIES, DELAWARE NORTH COMPANIES GAMING & ENTERTAINMENT,
INC., VERNON DOWNS AND TIOGA DOWNS**

District Council 37, Local 2021 ("DC 37" or the "Union"), by its undersigned counsel,

hereby moves this Court (the "Motion") for an order pursuant to section 926(a) of the

Bankruptcy Code appointing a trustee to pursue causes of action to avoid and recover fraudulent

transfers made to New York Racing Association ("NYRA"), Yonkers Racing Corporation,

Empire Resorts, Inc., Monticello Raceway Management, Inc. and Monticello Raceway, Finger

Lakes Racing Association, Inc., Delaware North Companies, Delaware North Companies Gaming & Entertainment, Inc., Vernon Downs and Tioga Downs (collectively, the "New York Tracks").[1] In support of the Motion, the Union respectfully represents:

## PRELIMINARY STATEMENT

1. The Union seeks the appointment of a trustee to recover hundreds of millions of dollars in payments made by New York City Off-Track Betting Corporation ("NYC OTB" or the "Debtor") at the direction of the State of New York (the "State") to the New York Tracks without corresponding value at a time when NYC OTB was severely undercapitalized or insolvent and incurring (but not reserving for) hundreds of millions of dollars in post-employment retirement benefit and other obligations. While the Debtor acknowledges that this vast and unrecompensed outflow of money was a principal cause of its bankruptcy, the Debtor has done nothing to recover these sums for the benefit of creditors. Unable to achieve a legislative solution for its chronic insolvency, the Debtor has now announced its intent to dismiss its bankruptcy case and completely close down, leaving its creditors with nothing. This Court should do what the Debtor will not. It should exercise its power under section 926(a) of the Bankruptcy Code to appoint a trustee to pursue and recover what will likely prove to be the Debtor's largest asset – the claims for the years of fraudulent transfers received by the New York Tracks.

2. Recovery of these funds from the New York Tracks is especially crucial for the NYC OTB employees and retirees represented by the Union. The Debtor has announced the imminent cutoff of health and welfare benefits to these Union members, and the State and New York City (the "City") have renounced their responsibility to make good on the benefit obligations owed to the employees and retirees who served them loyally. Recovery on the

---

[1] A proposed form of Order granting the Motion is annexed as Exhibit C.

Debtor's fraudulent transfer claims may prove the only source of payment for the millions of dollars owed to the Union's active and retired members.

## THE UNION AND THE UNPAID BENEFITS

3. DC 37 is a public employee union and the largest municipal union in New York City, representing 125,000 members and over 50,000 retirees. DC 37 represents 1,027 of the approximately 1,200 employees of NYC OTB, including betting clerks, cleaning and maintenance staff and all other support staff in all branches of NYC OTB.

4. DC 37 also represents approximately 608 retirees of NYC OTB. Under the current collective bargaining agreement with the Union in effect since April 1, 2000 (the "CBA"), NYC OTB committed to provide so-called "other post-employment benefits" ("OPEBs"), including health insurance, Medicare Part B reimbursements and welfare fund contributions to eligible retirees and beneficiaries.

5. The current annual cost for these benefits is $4 million for health insurance, $925,000 for supplemental health benefits, and $900,000 for Medicare Part B reimbursements for retirees.

6. DC 37 has been informed that all of the employees it represents will be removed from the NYC OTB payroll on December 24, 2010 – Christmas Eve. In addition, on December 16, 2010, NYC OTB advised DC 37 that it would not make the November, 2010 required welfare fund contribution for the retirees of $77,802.39, nor the estimated December, 2010 contribution of $78,000.

7. By letter dated December 8, 2010 (a copy of which is annexed as Exhibit A), the City's Corporation Counsel notified counsel for NYC OTB that the City, which funds the health and welfare benefits and is reimbursed by NYC OTB, will cease those benefits for NYC OTB

retirees. In particular, the City advised that "in light of the decision of the Board of the NYC OTB to cease operation, NYC OTB retirees including those who may retire as a result of any closure, will no longer have coverage under the health and welfare benefit plans in which they currently participate . . . ." Those benefits are currently set to terminate as of December 31, 2010.

8. The impact of the threatened cutoff of benefits will be devastating for the retirees represented by DC 37. Many of these retirees have serious health conditions. If NYC OTB does not honor its commitment under the CBA to provide ongoing healthcare benefits, these retirees will have inadequate means to pay for essential medical care.

9. The total liability for OPEBs is estimated by the Debtor to be over $223 million.

## THE DEBTOR'S BANKRUPTCY CASE

10. On December 3, 2009, the Debtor filed a voluntary petition under chapter 9 of Title 11 of the United States Code (the "Bankruptcy Code") [Docket No. 1]. On March 22, 2010 the Court entered an order for relief in the case [Docket No. 64].

11. On March 30, 2010, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). DC 37 was appointed as a member of the Committee and has duly served on the Committee throughout the case.

12. On November 30, 2010, NYC OTB filed its Second Amended Debt Adjustment Plan (the "Plan") [Docket No. 231] and a revised Disclosure Statement (the "Disclosure Statement") [Docket No. 232]. On December 1, 2010 this Court entered an order approving the Disclosure Statement [Docket No. 235].

13. On December 7, 2010, the New York State Senate considered but failed to approve proposed legislation upon which the Plan, as filed, was contingent. At the direction of

-4-

its State-appointed board of directors, NYC OTB shut down the substantial part of its operations as of the close of business on that same date, citing the failed legislation as the basis for the closure.

14. On December 15, 2010, the Debtor filed a motion to dismiss this case (the "Dismissal Motion") [Docket No. 242], which is scheduled for hearing on January 19, 2011. In the Dismissal Motion, the Debtor states that it will no longer pursue a plan of adjustment and will be moving forward with the closure of NYC OTB.

## **THE FRAUDULENT TRANSFERS TO THE NEW YORK TRACKS**

15. The Debtor's own filings in this Court as well as other public documents amply confirm that a principal cause of the Debtor's bankruptcy was the under-recompensed and unsustainable transfer of hundreds of millions of dollars of NYC OTB funds to the New York Tracks.

16. In its Disclosure Statement, the Debtor acknowledged that it was required under state law to make a variety of payments to the New York Tracks that "often exceed the Debtor's earnings after operating expenses, significantly degrading the Debtor's financial performance." Disclosure Statement at p. 9. The Debtor further noted that in recent years, "it had lost money because its operating expenses and required payments to the government and the racing industry have exceeded its residual Wagering Commissions." Id. Largely because of its unsupportable payments to the New York Tracks, the Debtor has "operated at a deficit for the last seven years." Id.

17. These statements are fully borne out by NYC OTB's description of its financial performance as set forth in the Disclosure Statement:

> During the audited 12-month period ended March 31, 2010, the
> Debtor processed total Handle [i.e., money wagered by customers]

-5-
NY 73106604

of $815.6 million. Winning bettors received $647.5 million of this amount, leaving the Debtor with $203.1 million in Wagering Commission as its actual revenue after including approximately $35 million for surcharge, uncashed tickets and other operating revenues. The Debtor made the following mandatory distributions for the same period: $78.4 million to the State's horse racing industry, $5.4 million to the City and other local governments, and $12.6 million to the State. This left $106.7 million for the Debtor to cover $142.6 million (excluding certain non-cash expenses) in operating expenses. Consequently, the Debtor incurred an operating deficit of $35.9 million for the year.

Id. at p. 17.

18. A report issued in 2009 by New York State Comptroller Thomas DiNapoli (the "DiNapoli Report") on its 2008 audit of NYC OTB, entitled "An Assessment of NYC Off-Track Betting Corporation's Financial Condition and Governance," made a similar observation:

> [I]n the fiscal year ended June 30, 2008, the Corporation received a total of $998.2 million in wagers. The winning bettors received about $760.9 million of this amount, leaving the Corporation with $244.7 million (which includes $7.2 million in miscellaneous other revenues not retained by the Corporation). The Corporation made statutory distributions totaling $128.6 million to the horse racing industry ($93.2 million), New York City and other local governments ($20.2 million), and New York State ($15.2 million), leaving $116.1 million to cover its own operating expenses. Since the Corporation's operating expenses for the year totaled $133.9 million (excluding certain non-cash expenses), it incurred an operating deficit of $17.8 million for the year.

DiNapoli Report at p. 10. A copy of the DiNapoli Report is annexed as Exhibit B.

19. The Debtor's contention that distributions to the New York Tracks were responsible for its deficits is supported by the DiNapoli Report, which noted:

> The Corporation's statutory distributions, although not considered an operating expense and not under the direct control of corporate management, represent a significant outlay for the Corporation. By far the most significant of these distributions are those to the horse racing industry. During the four years ended June 30, 2008, these distributions totaled $386 million and accounted for more than 72 percent of the Corporation's total $533.5 million in statutory distributions.

-6-

Id. at p. 14.

20.     In any given year, payments to the New York Tracks placed an overwhelming burden on the Debtor's business. For example, in the fiscal year ended June 2008, as discussed above, of the approximately $237 million NYC OTB retained after payments to bettors, approximately $93 million went to the racing industry, leaving NYC OTB with insufficient funds to pay its operating expenses.

21.     A table of the payments made to the racing industry during the three years ended June 30, 2008, as taken from the DiNapoli Report at p. 15, reflects the following:

| **Racing Industry Entity** | **(in Thousands)** | | | |
| --- | --- | --- | --- | --- |
| | **2005-06** | **2006-07** | **2007-08** | **Total** |
| NYRA | $55,938 | $ 53,361 | $ 51,690 | $ 160,989 |
| Finger Lakes Race Track | 6,098 | 6,058 | 5,801 | 17,957 |
| State Harness Tracks | 15,384 | 14,609 | 13,522 | 43,515 |
| Out-of-State Race Tracks | 15,249 | 14,872 | 14,901 | 45,022 |
| Horse Breeding Funds | 8,235 | 8,438 | 7,297 | 23,970 |
| **Totals** | **$ 100,904** | **$ 97,338** | **$ 93,211** | **$ 291,453** |

22.     While the Debtor was making these significant payments and operating at a deficit, it was also accumulating massive liabilities. As noted in the DiNapoli Report, as of June 30, 2008, again for illustrative purposes, the Corporation had "an accumulated balance sheet deficit (liabilities exceed assets) of more than $228 million mostly the result of accrued post-employment retirement benefits." Id. at p. 10.

23.     As detailed in Note 7 to the Debtor's Financial Statements for March 31, 2010 and 2009, included as an Exhibit to the Disclosure Statement, the Debtor's annual required

contribution ("ARC") for OPEBs was approximately $223,235,000 and $161,104,000 as of March 31, 2010 and 2009, respectively. The ARC represents the level of funding that if paid on an ongoing basis is projected to cover normal cost each year and amortize any unfunded actuarial liabilities.

24. The Debtor could not possibly fund these liabilities while making the statutory payments to the New York Tracks.

## BASIS FOR RELIEF

### a. Sections 544(b)(1) and 548 of the Bankruptcy Code

25. The Bankruptcy Code empowers NYC OTB to recover those statutory payments to the New York Tracks, thereby enabling NYC OTB to, at least in part, meet its obligations to other creditors. Pursuant to section 548(a)(1)(B) of the Bankruptcy Code, made applicable herein through section 901, the Debtor can avoid and recover through section 550 transfers of its property if the Debtor received less than reasonably equivalent value therefor and either: (i) the Debtor was at the time or became insolvent as a result of the transfer, (ii) was left with unreasonably small capital in its business or (iii) intended to or believed that it would incur debts beyond its ability to pay as they matured.

26. Section 544(b)(1) further enables the Debtor to also make use of state fraudulent conveyance law. The applicable state statute here is section 273 of the New York Debtor and Creditor Law (Chapter 12, Article 10), which is almost identical to section 548 of the Bankruptcy Code, except that it employs the term "fair consideration" rather than "reasonably equivalent value" and has a longer reach-back period of six years as compared to the two years afforded by section 548.

27. The statutory payments to the New York Tracks fall squarely within the definitions of fraudulent transfers in section 548(a)(1)(B) of the Bankruptcy Code and section 273 of New York Debtor Creditor Law.

28. There can be little question that NYC OTB has been insolvent for years. As discussed in this Court's March 22, 2010 opinion in this case, NYC OTB has faced economic troubles for years, such that, based upon the Debtor's financials discussed above, NYC OTB was likely insolvent when the statutory payments were being made over the six years leading up to the bankruptcy or became insolvent as a result thereof. *In re New York City Off-Track Betting Corp.*, 427 B.R. 256, 262 (Bankr. S.D.N.Y. 2010). In April 2008, following extensive hearings regarding NYC OTB's viability, the New York City Council passed a Resolution No. 1235, which specifically called "upon the Legislature of the State of New York to amend the New York State Racing, Pari-Mutuel Wagering and Breeding Law to Reduce State-imposed financial mandates on off-track betting corporations which have recently been absorbing a growing portion of the New York City Off-Track Betting Corporation's revenues, driving the corporation into insolvency." Quoted in Disclosure Statement at p. 12 (emphasis added). Indeed, this Court noted in its Memorandum Opinion And Order Denying In Part And Abstaining In Part To Motions To Compel The Debtor To Comply With The Requirements Of The New York Racing, Pari-Mutuel Wagering And Breeding Law And Make Certain Statutory Distributions, dated August 5, 2010 (the "Indirect Commission Opinion"), that "OTB's financial troubles have been caused, at least in part, by the Racing Law's requirement that OTB make distributions of its Handle to stakeholders in the New York Racing Industry." Indirect Commission Opinion at p. 4.

29. In any event, it is beyond doubt that: (i) the statutory payments to the New York Tracks left NYC OTB undercapitalized (given the operating deficits and inability to properly

operate its facilities discussed above), and (ii) the Debtor knew it was going to incur debts it could not pay as they matured. That is why the Debtor had, as the Court noted, "lobbied for the past five years for changing to the Racing Law's mandatory statutory distributions." Indirect Commissions Opinion at p. 4.

30. Similarly, it is indisputable that NYC OTB was not receiving reasonably equivalent value or fair consideration in return for making the statutory payments; the avowed purpose of the payments was simply to bolster the racing industry. As to the Indirect Commissions, the Court has already opined that they "are not provided in direct exchange for anything offered to [NYC] OTB," that the tracks "have not made any performance that benefited OTB," and that such commissions are "earned merely for being in existence when OTB accepts wagers on other races." Indirect Commission Opinion at p. 18 (emphasis added).

31. While the New York Tracks may argue that the payments they received are somehow exempt from avoidance because they were mandated by state law, the Bankruptcy Code affords no such protection. Congress could have but did not include statutory payments within the safe harbor provisions as it did other transfers. These payments clearly are subject to avoidance.

    **b.    Section 926(a) of the Bankruptcy Code**

32. If NYC OTB chooses not to challenge these payments in this Court, the Bankruptcy Code affords further recourse. Section 926(a) provides:

> If the Debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a) or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action.

33.     By this Motion, DC 37 requests that this Court exercise its power under section 926(a) to appoint a trustee to pursue valid causes of action for avoidance and recovery of fraudulent conveyances made to NYRA and the other New York Tracks.

34.     The filing by the Debtor of its Dismissal Motion makes clear that NYC OTB has no intention of pursuing such causes of action, notwithstanding that they constitute a valuable asset of the estate.

35.     This case presents precisely the circumstance for which appointment of a section 926(a) trustee was designed. As noted in the legislative history of section 926(a):

> This section [928 (now section 926)] is necessary because a municipality might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all other creditors. No change in the elected officials such a city would automatically occur upon filing of the petition, and it might be very awkward for those same officials to turn around and demand the return of the payments following the filing of the petition. Hence, the need for a trustee for such purpose.

Senate Report No. 95-989.

36.     Such is exactly the situation now before the Court. NYC OTB is a creature of the State, with all of its directors appointed by the Governor of New York. See section 603 of the New York Racing, Pari-Mutuel Wagering and Breeding Law. The New York Tracks are a powerful political constituency; indeed, it was largely for the benefit of the New York Tracks that NYC OTB was created by the State as a perennial source of revenue for the New York racing industry. The State-appointed managers of the Debtor understandably may be reluctant to seek recovery of fraudulent transfers from the New York Tracks. It is noteworthy in this regard that the Plan filed by the Debtor, a plan negotiated with the New York Tracks, provided (at Section V. I.) that the Debtor would retain the right to pursue all causes of action, except claims

-11-

against any New York Tracks, and that all potential claims against the New York Tracks would be released.

37.     The very fact that the New York Tracks negotiated for release of such claims provides powerful evidence of the validity and value of those claims.

38.     The New York Tracks and possibly the Debtor may argue that, in light of the Dismissal Motion, this case is not likely to be ongoing for the prosecution of these claims. The Union submits that this case should not be dismissed while there remains unfinished business in the bankruptcy. Accordingly, by separate pleading in response to the Dismissal Motion, DC 37 will oppose dismissal and request that the Court keep the case open for the limited purpose of allowing these fraudulent transfer claims to proceed.

39.     After all, the Debtor availed itself of chapter 9 and gave itself over to this Court's oversight. One of the principal powers at the Debtor's disposal is the pursuit of avoidance actions. If the Debtor chooses to abdicate this right, the Court should intercede to insure that the litigation is brought. This Court is a court of equity. DC 37 respectfully submits that the Court should not allow NYC OTB retirees to be left without recourse on its watch. The Union is not a faceless entity. It speaks for hundreds of lower and middle income retirees, New Yorkers who gave years of service to NYC OTB. Those retirees are in dire circumstances in large part due to the depletion of money from NYC OTB in the form of payments to NYRA and the other New York Tracks for years when the Company should have instead been reserving for these known OPEB liabilities.

40.     At this point, NYC OTB is taking no measures to protect its retirees. On the contrary, on December 20, 2010, it suddenly announced disbursement of 90% of the approximately $14.6 million set aside for Indirect Commissions, the only cash it claims to have,

NY 73106604

to the New York Tracks, rather than allocate even a small portion of those funds to the retirees. It did so notwithstanding a May 26, 2010 letter to the New York State Racing and Waging Board from the Debtor reserving the right to apply these funds for other purposes.

41. Thus, the recovery of the statutory payments made to the New York Tracks that constituted fraudulent conveyances will serve as an essential – and perhaps the only – source of funding for the obligation to the retirees which the Debtor has chosen to ignore.

42. Notice of Motion is being given to the Debtor by its counsel, the Creditors' Committee by its counsel, the U.S. Trustee, counsel for each New York Track that has appeared in this case and any party having made a request for service of pleadings.

43. No application has been made to this Court or any other for the relief sought herein.

WHEREFORE, DC 37 requests that this Court: (i) grant its Motion of appointment of a trustee pursuant to section 926(a) of the Bankruptcy Code to pursue causes of action to avoid and recover fraudulent transfers made to NYRA and the other New York Tracks, and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
December 22, 2010

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**

By: /s/ Curtis C. Mechling
Curtis C. Mechling
Mark A. Speiser
Sherry Millman
180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Attorneys for District Council 37, Local 2021*