**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>NEW YORK CITY OFF-TRACK BETTING CORPORATION,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Chapter 9<br><br>Case No. 09-17121 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING THE DEBTOR'S MOTION TO DISMISS CHAPTER 9 CASE AND DENYING DISTRICT COUNCIL 37, LOCAL 2012'S MOTION TO APPOINT A TRUSTEE PURSUANT TO SECTION 926 OF THE BANKRUPTCY CODE**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On December 15, 2010, New York City Off-Track Betting Corporation ("OTB" or the "Debtor") moved the Court for an order (the "Order") dismissing the case under sections 923 and 930 of the Bankruptcy Code and Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure. (ECF Doc. # 242.) A week later, on December 22, 2010, District Council 37, Local 2021 (the "Union") moved the Court for the appointment of a trustee pursuant to section 926 of the Bankruptcy Code. (ECF Doc. # 247.) This Memorandum Opinion addresses both motions (collectively, the "Motions"). The Court concludes that dismissal is appropriate and that the appointment of a trustee is therefore unnecessary.[1] Several other motions are also pending before the Court. They will be dealt with in separate orders.

---

[1] At the hearing on January 19, 2011 (the "Hearing"), counsel for OTB suggested that there was a possible middle ground by which the Court could dismiss but not close the case. The Court rejects that alternative. There is no estate in a chapter 9 case, and hence no estate to administer. Therefore, the case will be closed. *See* 11 U.S.C. § 350(a).

1

## BACKGROUND

On December 3, 2009, OTB filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code. (ECF Doc. # 1.) The factual background regarding OTB, including the business operations, capital and debt structure, and events leading to the filing of the chapter 9 case, is set forth in detail in this Court's Opinion and Order overruling objections to the Debtor's bankruptcy petition and statement of qualifications under § 109(c). *In re New York City Off-Track Betting Corp.*, 427 B.R. 256 (Bankr. S.D.N.Y. 2010).

On November 5, 2010, the Debtor filed its Debt Adjustment Plan (ECF Doc. # 193), a Disclosure Statement (ECF Doc. # 194) and its *Motion for an Order Approving the Disclosure Statement, Establishing a Record Date, Approving Ballots and Solicitation Procedures and Establishing Confirmation Procedures* (ECF Doc. # 195). On November 29, 2010, OTB filed its First Amended Debt Adjustment Plan (ECF Doc. # 220) and a revised Disclosure Statement (ECF Doc. # 221). Two days later, on November 30, 2010, the Debtor filed a Second Amended Debt Adjustment Plan (ECF Doc. # 2231) (the "Plan") and a further revised Disclosure Statement (ECF Doc. # 2232) (the "Disclosure Statement"). In the Plan and Disclosure Statement, OTB represented that it did not believe it would be able to continue operating without continued losses unless proposed legislation in the form described in Exhibit A to the Plan (the "Plan Legislation") was enacted and the Plan was confirmed and went effective. On December 2, 2010, the Court entered an *Order Approving the Disclosure Statement, Establishing A Record Date, Approving Ballots and Solicitation Procedures and Establishing Confirmation Procedures*. (ECF Doc. # 235.)

Although the New York State Assembly passed a bill on November 30, 2010, that was substantially similar to the Plan Legislation, the New York State Senate did not pass the bill and

2

adjourned without announcing future plans to address OTB's fate. The Debtor's Board of Directors adopted a resolution approving a plan to implement closure of OTB as of close of business on Friday, December 3, 2010. On December 3, 2010, OTB's Board of Directors voted to authorize OTB to continue operations through midnight on Tuesday, December 7, 2010 to allow the New York State Senate the opportunity to vote on the legislation before OTB ceased operations altogether. In light of the New York State Senate's failure to pass favorable legislation on Tuesday, December 7, 2010, OTB ceased substantial operations as of the close of business on December 7, 2010.

On January 19, 2011, the Court heard arguments relating to the Motions. At the Hearing, OTB's counsel represented to the Court that the Debtor is at this point in time merely a corporate shell with a Board of Directors. All day-to-day and wind down operations have ceased, all employees have been terminated, all cash has been disbursed with the exception of an account reserved to honor un-cashed checks and all officers have resigned.

## DISCUSSION

### A. The Debtor's Motion to Dismiss the Chapter 9 Case is Granted

*1. Applicable Legal Standard on a Motion to Dismiss a Chapter 9 Case Under Sections 923 and 930 of the Bankruptcy Code*

Section 930 of the Bankruptcy Code allows the court to dismiss a case under chapter 9 "for cause." 11 U.S.C. § 930. Section 930 provides a non-exclusive list of exemplary "causes" including unreasonable delay (§ 930(a)(2)), or the failure to propose a plan or the non-acceptance of a plan (§930(a)(4)-(5)). As the list is non-exhaustive, the court retains "the general equitable power to dismiss for such cause as determined, in the sound exercise of its discretion, to warrant dismissal." 6 COLLIER ON BANKRUPTCY ¶ 930.01 (16th ed. rev. 2010). A chapter 9 debtor's

3

request for dismissal is sufficient "cause" to warrant dismissal and an evidentiary showing in support of the request is not required. *See In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 224 (Bankr. N.D. Cal. 1991) ("Chapter 9 debtor's request for dismissal is "cause" for dismissal and [] the District is entitled to an order of dismissal without necessity of an evidentiary showing that dismissal would be in the best interests of creditors.").

    *2. Analysis*

It has been clear from the start of this case that OTB's ability to reorganize and confirm a plan of adjustment depended on the state legislature adopting changes to the New York Racing, Pari-Mutuel Wagering, and Breeding Law (the "Racing Law"). OTB repeatedly reported that it was running out of cash and would be forced to close if amendments to the Racing Law were not made. In the Court's opinion, issued on August 5, 2010, the Court reiterated a warning it had previously given that the Court has the power to dismiss the case when unreasonable delay by the debtor is prejudicial to creditors. *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 158 (Bankr. S.D.N.Y. 2010). Section 930 permits the Court to dismiss a chapter 9 case for cause, including "unreasonable delay by the debtor that is prejudicial to creditors . . . ." 11 U.S.C. § 930(a)(2). The record clearly establishes that many of OTB's creditors are being substantially harmed by OTB's failure to complete a plan for the adjustment of its debts, and to pay undisputed amounts due to creditors during the administration of this case. While the Court does not have the power to order OTB to pay particular creditors, the Court does have the power to dismiss the case where unreasonable delay by the debtor is prejudicial to creditors. Through no fault of OTB's creditors, OTB has been forced to close. No possibility of reorganizing OTB remains.

OTB has ceased operations and has concluded all efforts to seek confirmation of the Plan. The Debtor argues that because no other party may propose a plan of debt adjustment in OTB's case, continuation of a chapter 9 case serves no purpose. 11 U.S.C. § 941. The Court agrees. Churchill Downs Incorporated ("Churchill") contends in its objection to dismissal that "this is anything but the typical Chapter 9 case" and that the "sovereignty concerns typically implicated by chapter 9 dismissal are simply not implicated in this case and the Court should exercise its discretion to deny the Dismissal Motion." (ECF Doc. # 284 ¶ 5.) The Court disagrees with Churchill's position. OTB is owned by the state, and, therefore, this case raises the same sovereignty concerns as any other chapter 9 case. It is not the province of the Court to differentiate between political subdivisions, public agencies, or instrumentalities of the state, as Congress has determined that all of these qualify as a municipality and are governed by chapter 9. 11 U.S.C. § 101(40). As discussed below, dismissal of the bankruptcy case basically returns to creditors their non-bankruptcy procedural and substantive rights under state law. Because the Debtor is no longer operational and creditors do not stand to lose the ability to pursue their claims in state court, dismissal is appropriate.

OTB specifically requests that the Court dismiss the case without prejudice. This request follows from section 349(a) which provides that

> Unless the court, for cause, orders, otherwise, the dismissal of a case does not bar the discharge, in a later case under this title, of debts that were not dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title.

11 U.S.C. § 349(a). The Court agrees, and therefore grants the Debtor's motion to dismiss without prejudice. As already stated, because there is no estate in a chapter 9 case, *see In re New*

*York City Off-Track Betting Corp.*, 434 B.R. at 142, there is no estate to administer. Therefore, the Court directs that the case shall be closed.

In addition to the substance of the Debtor's motion to dismiss, there are several procedural issues surrounding the Debtor's request. Federal Rule of Bankruptcy Procedure 1017 provides that a case shall not be dismissed on the motion of the petitioner before a hearing on notice as provided for by Federal Rule of Bankruptcy Procedure 2002. However, Federal Rule of Bankruptcy Procedure 2002 does not contemplate notice of a hearing on a motion to dismiss a case under chapter 9. OTB has mailed notice of the hearing to creditors and the Court does not require that a second notice be circulated. In addition to a mailing, section 923 requires that the debtor provide published notice. 11 U.S.C. § 923. In their motion, OTB stated its intention to provide published notice in *The New York Post* in the form attached to their Motion as Annex A. However, at the Hearing, counsel for OTB requested that the Court relieve the Debtor of this requirement, as the Debtor has no funds available for such an expense. The statute is clear that publication is required "at least once a week for three successive weeks in at least one newspaper of general circulation published within the district in which the case is commenced." *Id.* The Court does not have the discretion to waive this requirement even if it does not have the power to enforce it against a state instrumentality with no remaining assets to pay for publication. The statute also requires publication in an additional newspaper "having a general circulation among bond dealers and bondholders as the court designates." *Id.* OTB has no outstanding bonds. Therefore, the Court concludes that OTB can dispense with this additional publication.

    **B.**    ***The Union's Motion to Appoint a Trustee Pursuant to Section 926 of the Bankruptcy Code is Denied***

The Union represents 1,027 of the approximately 1,200 former employees of OTB, including betting clerks, cleaning and maintenance staff and all other support staff in all branches

6

of OTB. The Union argues that the Debtor made transfers (which the Union concedes were mandated by State law), at a time when the Debtor was insolvent and therefore precluded from making such payments. (ECF Doc. # 247 ¶ 1.) The Union also contends that such payments were made in exchange for little or no consideration in violation of both bankruptcy and applicable New York State law. *Id.*

*1. Applicable Legal Standard Under 11 U.S.C. § 926*

Section 926 provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a) or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(b). The Union seeks the appointment of a trustee pursuant to section 926 "to recover hundreds of millions of dollars in payments made by NYC OTB at the direction of the State of New York to the New York Tracks without corresponding value at a time when NYC OTB was severely undercapitalized or insolvent and incurring (but not reserving for) hundreds of millions of dollars in post-employment retirement benefit [sic] and other obligations." (ECF Doc. # 247 ¶ 1.)

Upon motion by a creditor, the Court has the discretion to determine whether the appointment of a trustee is appropriate given the circumstances of the chapter 9 case. 11 U.S.C. § 926(a). Courts should be loath to appoint a trustee given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns. Collier notes that the narrow application of section 926 is evidenced by the fact that only a creditor, and not any party in interest (or the court *sua sponte*), can seek the appointment of a trustee. 6 COLLIER ON BANKRUPTCY ¶ 926.02. Section 926(a) anticipates a debtor's reluctance to bring an action against a creditor during a chapter 9 proceeding.

> This reluctance may arise from the fact that the transfer sought to be avoided would have been made by the debtor, such that the debtor actually

> favors the transfer rather than opposes it, or it may arise from the unwillingness of the debtor, while it is attempting to negotiate a plan, to antagonize its creditors by bringing causes of action against them for recovery of prepetition transfers.

*Id.*

As the issues presented by the Union's motion are novel, the guidance provided by Collier is particularly instructive. Perhaps the most salient language contained in Collier admonishes that "when the debtor has made a prepetition transfer in the exercise of its political or governmental functions, or in control of its income or property, the appointment by the court of a trustee to undo that transfer may constitute an interference with those powers or with that property, contrary to the mandatory dictates of section 904." *Id.* Given that the transfers at issue were made pursuant to New York State law, it appears that appointing a trustee to avoid these transfers may engender the very concerns alluded to in Collier. Additionally, once this case is dismissed, fraudulent conveyance claims under state law may be pursued in state court.

    *2. Analysis*

The Court is sympathetic to the plight of the Union members as outlined in the Union's motion and described at the Hearing. The former and retired employees have been left without pensions or health care benefits. The Court also acknowledges the deleterious effects OTB's demise has had on the Debtor's myriad other creditors. Nevertheless, the Court finds that the appointment of a trustee pursuant to section 926 is an inappropriate mechanism to resuscitate an essentially "dead" debtor.

The Union cites no authority in support of the proposition that appointment of a trustee is appropriate in the circumstances of this case. To the contrary, they make several points that undermine the relief they request. First, the Union argues that the legislative history of section 926(a) supports the appointment of a trustee. Their motion cites the following language:

> This section [928 (now 926)] is necessary because a municipality might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all other creditors. No change in the elected officials such a city would automatically occur upon filing of the petition, and it might be very awkward for those same officials to turn around and demand the return of payments following the filing of the petition. Hence, the need for a trustee for such purpose.

(ECF Doc. # 247 citing S. Rep. No. 95-989, at 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5795.) This scenario is not what is before the Court with OTB. OTB made the payments not because of political pressures or a desire for future good relations with a particular creditor or class of creditors; rather, it made the payments because such payments were mandated by state law. *See* NEW YORK RACING, PARI-MUTUEL WAGERING, AND BREEDING LAW §§ 527(3), 1016, 1018. In fact, the legislative history of section 926 anticipates the appointment of a trustee in those circumstances in which a debtor, that, for the sake of its *future interests*, does not wish to compromise or alienate important creditor relationships. OTB is no longer operational and therefore does not aspire to maintain and/or build strong ties to its creditors. Rather, OTB has effectively terminated all its ties to its creditors.

In addition to the unavailing legislative history, the Union concedes that "the applicable statute here is section 273 of the New York Debtor and Creditor Law (Chapter 12, Article 10), which is almost identical to section 548 of the Bankruptcy Code . . . ." (ECF Doc. # 247 ¶ 26.) Section 273 specifically provides that "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. DEBT. & CRED. LAW § 273. The New York Racing Association, Inc. ("NYRA") raises this point in its papers supporting dismissal. (ECF Doc. # 283.) Thus, the Union or its affected members may be able to pursue their rights in state court. Unlike the

9

Bankruptcy Code generally, chapter 9 is not concerned with balancing the rights of creditors and debtors. Rather, the principal purpose of chapter 9 is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations. *See* H.R. Rep. No. 95-595, at 263 (1977), *reprinted in* 1987 U.S.C.C.A.N. 5787, 6221. This sentiment is reflected in various places throughout chapter 9, most prominently in those sections that provide that only a municipality may file a chapter 9 petition (one cannot be filed involuntarily), and only the debtor may file a plan of debt adjustment. 11 U.S.C. § 941.

The Union devoted a great deal of attention to what it sees as the merits of its fraudulent conveyance allegations. In light of the Court's decision to dismiss and close the case, the Court will not address the merits of any fraudulent conveyance claim.

NYRA contends in their objection to the Union's motion that

> it is unclear whether the Court has authority to appoint a trustee here. Although section 926 of the Bankruptcy Code does state that a court may appoint a trustee to pursue causes of action under section 548 or 550 of the Bankruptcy Code, among others, section 904 of the Bankruptcy Code prohibits the court from appointing a trustee in a chapter 9 case without the consent of the debtor.

(ECF Doc. # 283 ¶ 4.) NYRA's reading of section 904 in conjunction with section 926 is erroneous. NYRA's contention that section 904 prohibits a court from appointing a trustee without the consent of the debtor renders section 926 mere surplusage. Section 926 explicitly anticipates and is intended to address those scenarios in which the debtor does not consent to the pursuit of a cause of action under sections 544, 545, 547, 548, 549(a) or 550 of the Bankruptcy Code. 11 U.S.C. § 926(a) ("If the debtor refuses to pursue a cause of action . . . then on request of a creditor, the court may appoint a trustee to pursue such cause of action.").

Section 904 presents other problems in the context of the Union's request for relief. Section 904 provides that "[n]otwithstanding any power of the court, unless the debtor consents

10

or the plan so provides, the court may not, by any stay, order or decree, in the case or otherwise, interfere with . . . any of the property or revenues of the debtor . . . ." 11 U.S.C. § 904(2). This language suggests that even if the Court were to appoint a trustee, it could not then order the Debtor to do anything in particular if any funds were recovered. While section 904 does not preclude the appointment of a trustee, it may operate to bar a court from ordering a chapter 9 debtor to pay the trustee for his or her services. The Court recognizes that the Union has not requested that the Court order the Debtor to use its property or revenues in a particular way and merely desires that the funds be returned to the Debtor. What is left unsaid is what a defunct debtor such as OTB would do with the funds that are recovered when the Court lacks the power to interfere with the property.

## CONCLUSION

For the reasons discussed above, the Court grants OTB's motion to dismiss the case without prejudice and denies the Union's request for the appointment of a trustee. The Court directs the Clerk of the Court to close the case.

**IT IS SO ORDERED.**

Dated: January 25, 2011
    New York, New York

        /s/Martin Glenn
        MARTIN GLENN
    United States Bankruptcy Judge
